# UNITED STATES DISTRICT COURT

for the
**EASTERN DISTRICT OF WISCONSIN**

In the Matter of the Seizure of
<span style="font-size:smaller">(Address or brief description of property or premises to be seized)</span>

ALL CRYPTO-CURRENCY, INCLUDING       Case Number: 23-909M(NJ)
APPROXIMATELY 53275.61943204 TETHERUS (USDT),
APPROXIMATELY 0.77640782 BITCOIN (BTC), AND
ANY OTHER CRYPTO-CURRENCY ON DEPOSIT IN
BINANCE ACCOUNT USER ID #85674883, HELD IN
THE NAME OF ATUL KUMAR SINGH (DOB: XX/XX/1990)
WITH AN ASSOCIATED EMAIL ADDRESS OF
ATULTHAKUR.AS@GMAIL.COM

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

TO: **BRYAN AYERS, a Special Agent assigned to the Drug Enforcement Administration, and any Authorized Officer of the United States**.

An application by a federal law enforcement officer or an attorney for the government requests that certain property be seized as being subject to forfeiture to the United States of America. The property is described as follows:

All crypto-currency, including approximately 53275.61943204 TetherUS (USDT), approximately 0.77640782 Bitcoin (BTC), and any other crypto-currency on deposit in Binance Account User ID #85674883, held in the name of Atul Kumar Singh (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com

I find that the affidavit and any recorded testimony establish probable cause to seize the property.

**YOU ARE HEREBY COMMANDED** to search on or before   <u>5/8/2023</u>       , 2023
<span style="font-size:smaller">(not to exceed 14 days)</span>

xxx ☐ in the daytime – 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night,    as I
reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge Nancy Joseph.

     ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. §2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person, who, or whose property, will be searched or seized <span style="font-size:smaller">(check the appropriate box)</span>    ☐ for _____ days. <span style="font-size:smaller">(not to exceed 30)</span>
                           ☐ until, the facts justifying, the later specific date of _____

Date and time issued <u>4/24/2023, 2023;    1:06 p.m.</u>          _____
                                                          <span style="font-size:smaller">*Judge's signature*</span>

City and state:   <u>Milwaukee, Wisconsin</u>          THE HONORABLE NANCY JOSEPH
                                              United States Magistrate Judge
                                              *Name & Title of Judicial Officer*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL CRYPTO-CURRENCY, INCLUDING
APPROXIMATELY 53275.61943204 TETHERUS (USDT),
APPROXIMATELY 0.77640782 BITCOIN (BTC), AND
ANY OTHER CRYPTO-CURRENCY ON DEPOSIT IN
BINANCE ACCOUNT USER ID #85674883, HELD IN
THE NAME OF ATUL KUMAR SINGH (DOB: XX/XX/1990)
WITH AN ASSOCIATED EMAIL ADDRESS OF
ATULTHAKUR.AS@GMAIL.COM

Case
Number:23-909M(NJ)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Bryan Ayers, being duly sworn depose and say:

I am a Special Agent assigned to the Drug Enforcement Administration, and have reason to believe that in the Northern District of California there is now certain property, namely, all crypto-currency, including approximately 53275.61943204 TetherUS (USDT), approximately 0.77640782 Bitcoin (BTC), and any other crypto-currency on deposit in Binance Account User ID #85674883, held in the name of Atul Kumar Singh (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com, that is civilly forfeitable under 21 U.S.C. § 881(a)(6) and 18 U.S.C. §§ 981 (a)(1)(A) and 981(a)(1)(C), and criminally forfeitable under 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1), as proceeds (1) of a conspiracy to distribute controlled substances committed in violation of 21 U.S.C. §§ 841(a)(1), 841(h), 843(c)(2)(A), and 846; and (2) involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1), and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b), and for purposes of criminal forfeiture under 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

❏ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Signature of Affiant
Bryan Ayers, DEA

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone and email.

4/24/23 @ 1:08 p.m.
_____

at Milwaukee, Wisconsin
City and State

_____
Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEIZURE WARRANT**

I, Bryan Ayers, being first duly sworn, hereby depose and state as follows:

**FUNDS TO BE SEIZED**

1.    I submit this affidavit in support of an application for a warrant to seize approximately:

   a.   **177914.622 TetherUS (USDT), 1.848321249 Bitcoin (BTC), and any other crypto-currency on deposit in Blockchain.com Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, held in the name of RAUNAK SINGH (DOB: XX/XX/1991) with an associated email address of vikashq6999@gmail.com ("Subject Account #1").**

   b.   **53275.61943204 TetherUS (USDT), 0.77640782 Bitcoin (BTC), and any other crypto-currency on deposit in Binance Account User ID #85674883, held in the name of ATUL KUMAR SINGH (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com ("Subject Account #2").**

2.    For the reasons set forth below, I submit that probable cause exists to believe that approximately a) **177914.622 TetherUS (USDT), 1.848321249 Bitcoin (BTC), and any other crypto-currency on deposit in Blockchain.com Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, and** b) **53275.61943204 TetherUS (USDT), 0.77640782 Bitcoin (BTC), and any other crypto-currency on deposit in Binance Account User ID #85674883** are:

- Proceeds of a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to deliver, distribute, or dispense a controlled substance by means of the Internet, in violation of Title 21, United States Code, Sections 841(h), 843(c)(2)(A), and 846; and distribution of a controlled substance by means of the Internet, in violation of Title 21, United States Code, Section 843(c)(2)(A);

- Proceeds involved in money laundering transactions in violation of Title 18, United States Code, Section 1956(a)(1);

- Subject to civil forfeiture under Title 21, United States Code, Section 881(a)(6) and Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C), and subject to criminal forfeiture under Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982(a)(1); and

- Subject to seizure via a civil seizure warrant under Title 18, United States Code, Section 981(b) and Title 21, United States Code, Section 881(b), and via a criminal seizure warrant under Title 21, United States Code, Section 853(f).

## BACKGROUND AND EXPERIENCE

3.     I am a Special Agent assigned to the Milwaukee District Office of the Drug Enforcement Administration (DEA). I have worked full-time as a Special Agent for the past 3 years. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4.     During my tenure as a law enforcement officer, I have been involved in the investigation of drug traffickers in Milwaukee County, in the State of Wisconsin, across the United States, and internationally. I have received training in the investigation of drug trafficking, money laundering, and computer crimes. My training and experience includes the following:

   a.     Through informant interviews and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations finance, source, purchase, transport, and distribute controlled substances in Wisconsin, throughout the United States, and internationally.

   b.     I have used my training and experience to locate, identify, and seize multiple types of drugs, drug proceeds, and drug contraband.

   c.     I have conducted several investigations that have resulted in seizures of criminally derived property, including monetary instruments.

   d.     I know that controlled substances, drug paraphernalia, and drug proceeds are sent through the U.S. Postal Service system and other parcel services, such as FedEx and UPS, and I am familiar with many of the methods used by individuals who attempt to use mail services to illegally distribute controlled substances.

   e.     I have also relied upon informants to obtain controlled substances from drug traffickers and have made undercover purchases of controlled substances.

   f.     I am familiar with the language used over the telephone and other electronic communications to discuss drug trafficking and know that the language is often limited, guarded, and coded. I know the various code names used to describe controlled substances. I also know that drug traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as email and messaging applications), and social media to facilitate these crimes.

   g.     I know that drug traffickers often register phones, mailboxes, bank accounts, electronic communication services, and other instrumentalities of drug trafficking in the names of others, also known as nominees, to evade law enforcement.

2

h.      I know that drug traffickers often keep documents and records about the sourcing, ordering, sale, transportation, and distribution of controlled substances.

i.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement officials. I know that drug traffickers often secure drug proceeds at locations within their dominion and control, such as their residences, businesses, and storage facilities, and in safes or other secure containers.

j.      I know that drug traffickers often attempt to protect and conceal drug proceeds through money laundering, including but not limited to domestic and international banks, securities brokers, service professionals, such as attorneys and accountants, casinos, real estate, shell corporations, business fronts, and otherwise legitimate businesses which generate large quantities of currency. I know that it is common for drug traffickers to obtain, secrete, transfer, conceal, or spend drug proceeds, such as currency, financial instruments, precious metals, gemstones, jewelry, books, real estate, and vehicles. I know that it is also common for drug traffickers to maintain documents and records of these drug proceeds, such as bank records, passbooks, money drafts, transaction records, letters of credit, money orders, bank drafts, titles, ownership documents, cashier's checks, bank checks, safe deposit box keys, money wrappers, and other documents relating to the purchase of financial instruments or the transfer of funds. I know that drug traffickers often purchase or title assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are titled or purchased by nominees, the drug traffickers actually own, use, and exercise dominion and control over these assets. The aforementioned books, records, receipts, notes, ledgers, and other documents are often maintained where the traffickers have ready access. These may be stored in hard copy or soft copy on paper, computers, cellular devices, and other electronic media or electronic storage devices.

k.      Digital currency, also known as crypto-currency, is generally defined as an electronic-sourced unit of value, which can substitute for fiat currency. Digital currency exists entirely on the Internet and is not stored in any physical form. Digital currency is not issued by any government, bank, or company and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.

l.      Bitcoin is one type of digital currency. Bitcoin payments are recorded in a public ledger maintained by peer-to-peer verification and is, therefore, not maintained by a single administrator or entity. Individuals can acquire bitcoins either by "mining" or by purchasing Bitcoins from other individuals. An individual can "mine" for Bitcoins by allowing his computing power to verify and record the bitcoin payments into a public ledger. Individuals are rewarded for this by receiving newly-created Bitcoins. An individual can send and receive Bitcoins through peer-to-peer digital transactions or by using a third-party broker. Such transactions can be performed on any type of computer.

3

m.      Bitcoins are stored in digital "wallets." A digital wallet essentially stores the access code that allows an individual to conduct bitcoin transactions on the public ledger. To access bitcoins on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address is similar to an account number while the private key is similar to an account password. Even though the public addresses of transactors are recorded on the public ledger, the true identities of the individuals or entities behind the public addresses are not recorded. If, however, a real individual or entity is linked to a public address, an investigator could determine what transactions were conducted by that individual or entity. Bitcoin transactions are, therefore, described as "pseudonymous," or partially anonymous.

n.      A Binance account has multiple "wallets," sub-accounts, or sub-wallets for holding different currency (e.g., U.S. dollars, Bitcoin, Dogecoin, TetherUS, Ethereum, Bitcoin Cash, Bitcoin Gold), but all of the sub-wallets are within one account. The funds can be readily moved from one currency to another currency within the same account. The value of the cryptocurrency relative to the U.S. dollar is constantly changing so the exact value is unknown until the funds are transferred out. Many Bitcoin companies or wallets allow the account holder to control the "key" for each wallet and that "key" is needed to transfer or remove funds. However, Binance controls the "key" to each of the wallets on its platform.

o.      Drug traffickers often use enhanced cryptocurrency, such as Bitcoin, to protect their identities, launder money, and conceal drug proceeds, because of the anonymity provided by cryptocurrency. Bitcoin is a decentralized digital currency without a central bank or single administrator. Payments are sent from user-to-user on the peer-to-peer Bitcoin network without the need for intermediaries. These services add layers of anonymity to financial transactions to evade law enforcement.

p.      I know that drug traffickers often maintain large amounts of currency, including funds in readily accessible financial accounts, to finance their ongoing drug business. I know that those involved in drug trafficking or money laundering often keep records of their transactions. Because drug trafficking generates large sums of cash, drug traffickers often keep detailed records about the distribution of narcotics and the laundering of proceeds. I also know that drug trafficking and money laundering activities require the cooperation, association, and communication between and among a number of people. As a result, people who traffic in narcotics or launder money for such organizations possess documents that identify other members of their organization, such as telephone books, address books, handwritten notations, telephone bills, and documents containing lists of names and addresses of criminal associates. Such records also provide information about the identities of co-conspirators who launder money and traffick drugs. I also know that drug traffickers commonly maintain addresses or telephone numbers which reflect names, addresses, or telephone numbers of their drug trafficking and money laundering associates in hard copy and soft copy on papers, books, computers, cellular devices, and other electronic media or electronic storage devices.

q.      I know that drug traffickers often use electronic devices, such as telephones, cellular devices, computers, and currency counting machines to generate, transfer,

4

count, record, or store the information described above and conduct drug trafficking and money laundering. I am familiar with computers, cellular devices, pagers, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices. Based upon my training and experience, I know that computer hardware and software can be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

r.      I have participated in numerous drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators; and

s.      I have also participated in the execution of numerous premises search warrants and arrests, where controlled substances, firearms, drug paraphernalia, drug proceeds, electronic devices, and records relating drug trafficking and drug proceeds were seized.

5.      This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

5

6.      This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## STATUTORY BACKGROUND

7.      The Ryan Haight Online Pharmacy Consumer Protection Act of 2008, codified at Title 21, United States Code, Section 829, amended the Controlled Substances Act to address online pharmacies. No controlled substance that is a prescription drug as determined by the Federal Food, Drug and Cosmetic Act may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by Title 21, Code of Federal Regulations, Section 1306.09(a). *See* 21 U.S.C. §§ 829(e), 841(a)(1), 841(h), 843(c)(2)(A).

8.      According to Section 829, the term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least one in-person medical evaluation of the patient or a covering practitioner. The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who has conducted at least one in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine within the previous 24 months and is temporarily unavailable to conduct the evaluation of the patient.

9.      The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies. *See* 21 C.F.R. § 1301.11(b).

10.     Under Title 21, United States Code, Section 853(d):

6

There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—

(1) such property was acquired by such person during the period of the violation of this subchapter or subchapter II or within a reasonable time after such period; and

(2) there was no likely source for such property other than the violation of this subchapter or subchapter II.

21 U.S.C. § 853(d)

11.     In addition, the Government may obtain a seizure warrant for up to the amount of criminal proceeds deposited into the account.

12.     I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after a restraining order or similar process has been issued to financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant would be the most effective way to assure the availability of the money sought to be seized for forfeiture by the accompanying seizure warrant.

**PROBABLE CAUSE**

**A. Background**

13.     In 2015, the Milwaukee District Office of the DEA initiated an investigation into a series of related internet pharmacies, which advertised controlled and non-controlled pharmaceuticals for sale without requiring a prescription. During the course of the investigation in 2019, case agents identified a co-conspirator in Florida (hereinafter referred to as "SOI-1") and a co-conspirator in Texas (hereinafter referred to as "SOI-2"). These two co-conspirators were working together to receive bulk shipments of controlled pharmaceuticals and reship them to customers throughout the United States. An undercover agent in the Eastern District of Wisconsin purchased controlled pharmaceuticals numerous times from SOI-1 and SOI-2 between July 2019 and August 2020. Subsequent analysis of these suspected controlled

7

substances by the DEA laboratory, identified controlled substances including heroin, methamphetamine, ketamine, tramadol, diazepam, alprazolam, and modafinil.

14.    In August 2020, case agents executed federal search warrants in Florida and Texas at the residences of SOI-1 and SOI-2. Case agents seized electronic devices and documents containing evidence identifying many of the drug suppliers and customers, communications related to the sale of controlled substances, and money laundering of drug proceeds. Case agents also seized approximately $100,000 in drug proceeds and different types of suspected controlled pharmaceuticals. Case agents have had the opportunity to interview SOI-1 and SOI-2 multiple times about the various drug suppliers and the circumstances around communication with the suppliers and drug payments to the suppliers. SOI-1 and SOI-2 identified multiple drug suppliers, email accounts, Bitcoin accounts, and WhatsApp accounts used by their drug suppliers to conduct drug transactions.

15.    SOI-1 identified an online pharmacy www.pill2days.com ("PILL2DAYS"), from which SOI-1 had purchased Xanax (a Schedule IV controlled substance) and suspected Adderall (a Schedule II controlled substance) in the summer of 2020. This suspected Adderall was seized by case agents, and subsequent analysis by the DEA Laboratory in Chicago revealed the presence of modafinil (a Schedule IV controlled substance).  SOI-1 communicated with the website representative via email. Case agents later reviewed these emails and found discussions of controlled substance shipments from overseas to the United States, shipments within the United States, drug prices, a drug photograph, and drug quantities. SOI-2 was responsible for sending the drug payment, so SOI-2 communicated with a website representative via telephone at a phone number known to be used by the online pharmacy PILL2DAYS.

16.    SOI-1 and SOI-2 were told by PILL2DAYS representatives that they ship pharmaceuticals from overseas to U.S. customers at the advertised prices on the website.  At a significantly higher price, U.S. customers can receive the drug parcels from domestic reshippers established in the United States. SOI-1 stated that he was aware of reshippers in Arizona and Florida. In August 2020, case agents were

8

able to intercept and seize a parcel from PILL2DAYS to SOI-2, which was supposed to contain 360 tablets of Adderall. This parcel was shipped by a re-shipper in Vermont. These tablets were sent to the DEA laboratory, and found to contain 364 tablets of modafinil (a Schedule IV controlled substance). Case agents later reviewed financial records and found that SOI-1 and SOI-2 sent payment for the Xanax and Adderall purchases to bank accounts being used by PILL2DAYS to process customer payments.

17. Case agents reviewed the PILL2DAYS online pharmacy website www.pill2days.com. Drug payments are accepted via crypto currency, Venmo, PayPal, Zelle, and credit/debit card. Throughout this investigation from August 2020 through present time, the website has offered the following controlled substances for sale:

      a.     Adderall – a Schedule II controlled substance

      b.     Phentermine – a Schedule IV controlled substance

      c.     Diazepam – a Schedule IV controlled substance

      d.     Ativan – a Schedule IV controlled substance

      e.     Klonopin – a Schedule IV controlled substance

      f.     Xanax – a Schedule IV controlled substance

      g.     Ambien – a Schedule IV controlled substance

      h.     Soma (carisoprodol) – a Schedule IV controlled substance

      i.     Tramadol - a Schedule IV controlled substance.

18. In December 2020, case agents began conducting multiple undercover purchases from PILL2DAYS. To date, case agents have purchased drugs, including but not limited to tramadol, tapentadol, purported oxycodone, purported hydrocodone, purported Adderall, codeine, and Xanax (alprazolam). Some of these drugs were found to be counterfeit pills containing fentanyl, methamphetamine, or cocaine. Case agents have learned, based upon receiving dozens of drug parcels, reviewing parcel records, financial analysis, and conducting multiple interviews, that there is a network

9

of domestic reshippers throughout the United States, who receive bulk drug parcels from overseas. These domestic reshippers are then directed by other members of PILL2DAYS located overseas the specific drug types and quantities to the customers. These domestic reshippers are supplying customers from multiple illegal online pharmacies. Some of these domestic reshippers directly work for PILL2DAYS, while other domestic shippers work for the other online pharmacies but regularly supply PILL2DAYS customers. PILL2DAYS then coordinates payments to these other drug suppliers.

19. From conducting numerous undercover drugs buys, case agents were able to identify multiple domestic drug shippers and payment processors working for PILL2DAYS and other groups supplying PILL2DAYS. On May 12, 2022, case agents executed federal search warrants at the homes of SOI-3 and SOI-4 located at their separate residences in Pasadena, Texas.

20. SOI-3 was the only person present during the execution of the search warrant of their residence. Case agents observed tens of thousands of various suspected controlled pharmaceuticals in plain view throughout the living room. Between this target's residence and a storage locker identified by SOI-3, case agents seized approximately 247,000 tablets of suspected counterfeit oxycodone (fentanyl), tramadol, Xanax, and tapentadol. SOI-3 wished to cooperate and answer questions.

21. After being advised of and waiving his/her rights, SOI-3 said that he/she was recruited in June 2021 to help SOI-4 receive bulk drug parcels from California, break them down to smaller parcels, and ship them at local U.S. Post Offices to domestic customers. SOI-3 and SOI-4 split the profits. In November 2021, SOI-3 refused to continue distributing controlled substances with SOI-4 so SOI-3 contacted their point of contact "Steven Parker" who provided direction to receive and ship controlled substances. SOI-3 said Parker is a male subject with an Indian accent and claimed to live in India. Starting in November 2021 through May 12, 2022, SOI-3 shipped on average 20 to 59 drug parcels per day (9,000 pills per day). SOI-3 received two to three bulk drug parcels from California per week, and each bulk parcel contained approximately 60,000 pills. In addition to receiving and shipping drugs, SOI-3 also

10

received customers' drug payments, via Venmo, PayPal, CashApp, and Zelle through SOI-3's two bank accounts. SOI-3 said he/she has been unemployed since June 2020, and the only source of income since then has been from distributing controlled substances. SOI-3 stated he/she received approximately $33,000 per month in drug payments and was allowed to keep much of the funds. He/She used these funds for personal expenses, as well as to further the drug trafficking organization by funding expenses such as shipping postage and shipping materials. Funds SOI-3 was not allowed to keep, he/she was directed by Steven Parker to transfer to a Bitcoin address using SOI-3's CashApp account.

22.     Case agents later reviewed CashApp records and noted SOI-3 and another identified DTO payment processor, John Jerome, transferred Bitcoin numerous times to **Binance Bitcoin address 1JQhAAVQUrjoxmVhHZo2pfQzuZLxGyrXbG, hereinafter referred to as "Prior Subject Account."** This **Prior Subject Account** is the first known crypto currency account used by the DTO to receive and launder drug proceeds. The DTO then transitioned to using **Subject Account #1** and **Subject Account #2.**

23.     SOI-3 logged into his/her various financial accounts for case agents using his/her cell phone. SOI-3 stated all the funds in each of these accounts was drug proceeds, and as the accounts were being reviewed, additional drug payments were being made and deposited by customers. The following were approximate balances of each account:

- PayPal Account #2189777717365318024 - $14,728.35
- CashApp –
  - $649.00 USC
  - 0.10211514 Bitcoin (approximate value of $2,873.52)
- Venmo - $648.39
- National Bank & Trust Co. #8818 - $7,894.24
- Legend Bank #7709 - $9,153.44

24.     Case agents seized approximately 1,000 pills of counterfeit oxycodone (fentanyl) and tramadol from the residence of SOI-4. SOI-4 provided a mirandized statement consistent with SOI-3. SOI-4 said he/she recruited SOI-3 to help SOI-4 distribute controlled pharmaceuticals which were

11

received from California. They ceased working together a short time later, but SOI-4 continued shipping pills on his/her own.

25.     In May and June 2022, case agents served federal seizure warrants upon PayPal, National Bank & Trust Co., and Legend Bank. A total of $31,688.81 was seized from these three accounts belonging to SOI-3.

26.     On July 11, 2022, Magistrate Judge Stephen Dries authorized a WhatsApp pen trap and trace warrant in the Eastern District of Wisconsin. The warrant was for a phone number for "Steven Parker" who is the person, believed to be in India, who SOI-3 and SOI-4 communicated with pertaining to receiving bulk drug parcels, reshipping to U.S. customers, and receiving and sending of drug payments. Steven Parker, SOI-3, and SOI-4 were acting as co-conspirators to supply PILL2DAYS and other illegal online pharmacies.

27.     On July 28, 2022, case agents reviewed communication with drug supplier, Steven Parker. Case agents identified six U.S. persons who were communicating with Steven Parker, and all of these persons are believed to be domestic re-shippers and/or payment processors who receive customer drug payments. They then transfer these drug proceeds as directed by Steven Parker. Case agents learned that SOI-3 was again communicating with Steven Parker in excess of one thousand times during the WhatsApp pen trap and trace warrant.

28.     On October 20, 2022, case agents met with SOI-3 at SOI-3's residence. SOI-3 said he/she ended all communication with Steven Parker for two months after the execution of the search warrant at his/her residence on May 12, 2022. SOI-3 then contacted Steven Parker, via WhatsApp. SOI-3 told him about case agents "raiding" SOI-3's home. Parker asked SOI-3 to continue receiving bulk drug parcels and drug payments. SOI-3 refused to receive drug parcels so Parker asked SOI-3 to continue receiving customer payments which she agreed to. Parker said these payments were for the sale of jewelry, but SOI-3 was still being asked to ship drugs for Parker, and the payments SOI-3 received were identical to

12

the types of payments SOI-3 previously received for the sale of drugs. Despite Parker's statement that the payments were for jewelry, SOI-3 believes these payments were for the sale of drugs.

29.     SOI-3 registered a Limited Liability Company (LLC) and opened a bank account for the sole purpose of receiving these drug payments and transferring them to accounts as directed by Parker. SOI-3 registered the LLC to conceal the true source of the funds and to aid in paying taxes on the profits to make it appear to be legitimate. Since beginning business again with Parker in approximately July 2022, SOI-3 has received $25,000 to $30,000 via CashApp, $20,000 to $25,000 via Zelle and wire transfers, and minimal amount via Venmo. SOI-3 and Parker engaged in nearly daily conversations consisting of instructions to process payments and directing SOI-3 where to transfer drug proceeds. SOI-3 showed case agents the balance of SOI-3's three bank account and CashApp account which had a total balance of $11,678.88.

30.     Per Steven Parker's direction, SOI-3 transferred all the drug payments deposited into SOI-3's CashApp account since July 2022 to **Blockchain.com Bitcoin address 3CT1H5oi9b2NAbTxgs5TyKpG8ALtSja5Mz (Subject Account #1)**. **Subject Account #1** was later identified as **Blockchain Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, held in the name of RAUNAK SINGH (DOB: XX/XX/1991) with an associated email address of vikashq6999@gmail.com.** Case agents directed SOI-3 to cease sending funds to Steven Parker. Over the next several weeks, suspected drug payments continued to be deposited into SOI-3's bank account. Steven Parker directed SOI-3 to send the funds via Bitcoin to a new **Bitcoin address 1A56UYaDjmchbNZxCkdjd2vCgd8qmvVQEm (Subject Account #2).** SOI-3 instead consensually transferred the funds, $11,197.70, to a government controlled bank account for forfeiture purposes and ended all communication with Steven Parker.

31.     Case agents received records from Blockchain.com, pursuant to a DEA administrative subpoena. These records are pertaining to **Blockchain.com Subject Account #1 Bitcoin address**

13

**3CT1H5oi9b2NAbTxgs5TyKpG8ALtSja5Mz** which SOI-3 sent at least thirty-three Bitcoin transfers to consisting of 2.28658097 Bitcoins (valued at approximately $64,481.58) from July 26, 2022 through October 19, 2022.  The account holder is as follows:

- Name: RAUNAK SINGH
- DOB: XX/XX/1991
- Email: vikashq6999@gmail.com
- Phone: +91-9838969898
- Address: Faizabad, Uttar Pradesh, 224171, India

32.     Case agents learned that upon serving Blockchain.com with the DEA administrative subpoena, Blockchain.com froze **Subject Account #1 which contains Bitcoin address 3CT1H5oi9b2NAbTxgs5TyKpG8ALtSja5Mz**.  It was immediately after the freezing of this account that Steven Parker directed SOI-3 to begin sending drug proceeds to **Binance Bitcoin address 1A56UYaDjmchbNZxCkdjd2vCgd8qmvVQEm (Subject Account #2).**  As a result, case agents believe since October 22, 2022, **Subject Account #2** is now receiving drug proceeds and is being used to facilitate drug trafficking and money laundering.  The account balance in the frozen **Blockchain.com Subject Account #1** is as follows:

a.  4.07244111 Pax Dollar (PAX) – Approximate value of $4.03

b.  172938.068594 TetherUS (USDT) – Approximate value of $172,938.06

c.  1.848321249 Bitcoin (BTC) – Approximate value of $52,122.66

d.  0.13543292 Ethereum (ETH) – Approximate value of $258.41

e.  4976.553935 Tether (USDT) – Approximate value of $4,976.55

**B. Identification of Bitcoin Address Clusters and Atul Kumar Singh**

33.     On October 17, 2022, case agents received records from J2 Web Services, pursuant to a federal search warrant authorized by Magistrate Judge William Duffin in the Eastern District of Wisconsin on September 23, 2022.  The PILL2DAYS customer service phone number is hosted by J2 Web Services and maintains text message content, photo message content, and voicemails.

14

34.     Case agents reviewed the text message content from the J2 Web Services records and found PILL2DAYS directed multiple customers to send drug payments to several different Bitcoin addresses. In addition, the undercover case agent conducted an undercover drug buy by making the payment, via Bitcoin. From these Bitcoin addresses provided by PILL2DAYS, case agents conducted an extensive analysis of these Bitcoin addresses, identified crypto currency clusters containing these Bitcoin addresses, and traced the funds going to and from these Clusters. Case agents know a crypto currency Cluster is a group of Bitcoin addresses, TetherUS addresses, or other crypto currency addresses which are controlled by the same entity.

35.     Case agents found that at least one customer and the undercover agent were directed to transfer drug payments to Coinbase Bitcoin address 36zJroSPVis9GpwnkQg2Cvf3gJh7rrR2T5. Records were later received from Coinbase pursuant to a DEA administrative subpoena and found the account lists to SOI-5. Case agents interviewed SOI-5 who, at the time of the interview, was a recovering drug addict and used to be a PILL2DAYS customer. SOI-5 was solicited by PILL2DAYS to aid in opening this Coinbase account and other bank accounts to receive and transfer drug proceeds.

36.     In February 2023 and March 2023, an undercover agent was directed on two occasions by PILL2DAYS to send drug payments to Binance Bitcoin address 1Ben4Kgi3hBWjaG4bpPXSrZckpeQ1zYzWg. Case agents received Binance records pursuant to a DEA administrative subpoena. This Binance account lists to known PILL2DAYS co-conspirator, VARUN KUMAR PANDAY. Case agents found multiple text messages in the J2 Web Services records that PILL2DAYS customers were being directed to send drug payments to bank and Zelle accounts listing to PANDAY. As a result, PANDAY is known to be a regular recipient of drug payments on behalf of PILL2DAYS. Based on case agents' training, experience, and review of records acquired throughout this investigation, case agents believe PANDAY's Binance account is being used to receive drug payments directed to PILL2DAYS.

15

37. Case agents found two customers who were directed by PILL2DAYS to send Bitcoin drug payments to Bitcoin address 19pXsAd62vqWbJiTUy9ZYNK5XY7uBV5ub4 which is part of a private wallet. Case agents traced Bitcoin from this private address to Binance Bitcoin address 1P6gwEZNBWxCn7TFvyTMR16ZTbyQWK2orp and also to a cluster of private Bitcoin addresses, hereinafter referred to as Cluster A.

38. Case agents received records from Binance pertaining to Bitcoin address 1P6gwEZNBWxCn7TFvyTMR16ZTbyQWK2orp, pursuant to a DEA administrative subpoena. These records identified the Binance account holder receiving drug proceeds as Nicolas Bignone. Case agents know Bignone is an Argentine National who is paid by PILL2DAYS for Bignone creating and maintaining the websites, including the PILL2DAYS website. This Binance account received 0.056468 Bitcoin (value at the time $3,710.38) on November 15, 2021.

39. Case agents traced the drug proceeds being deposited and withdrawn from Cluster A. PILL2DAYS customers were directed to send drug payments directly to Cluster A, in addition to drug payments indirectly being traced to Cluster A. On November 2, 2022, 0.004882 Bitcoin (approximately $137.67) and November 3, 2022, 0.1729 Bitcoin (approximately $4,875.78) of suspected drug proceeds were transferred from Cluster A to **Binance Bitcoin address 1A56UYaDjmchbNZxCkdjd2vCgd8qmvVQEm (Subject Account #2).** This is the same Bitcoin address that SOI-3 was directed to begin sending drug proceeds to in the fall of 2022 after the **Blockchain.com Subject Account #1** was frozen.

40. Case agents received records from Binance pertaining to **Binance account containing Bitcoin address 1A56UYaDjmchbNZxCkdjd2vCgd8qmvVQEm (Subject Account #2),** pursuant to a DEA administrative subpoena. Between June 4, 2021 and April 4, 2023, this Binance account has received 284 Bitcoin deposits of 26.687169710 Bitcoins (approximate value $752,578.19) and 9 TetherUS deposits of 78418.20 TetherUS (approximate value $78,418.20). The vast majority of deposits have occurred since

16

November 2022 and are consistent with drug payments. **Subject Account #2** lists to the following account holder:

- **Name: ATUL KUMAR SINGH**
- **DOB: XX/XX/1990**
- **Binance User ID: 85674883**
- **Email: atulthakur.as@gmail.com**
- **+91-9415407704 (India)**

C.      **Identification of Binance Deposits into Subject Account#1**

41.      Case agents identified two BinanceUS crypto currency accounts responsible for sending Bitcoin to **Blockchain.com Bitcoin address 3CT1H5oi9b2NAbTxgs5TyKpG8ALtSja5Mz (Subject Account #1)** which is the same account SOI-3 transferred drug proceeds to on dozens of occassions. These transactions from BinanceUS occurred on October 17, 2022 of 0.49 Bitcoin (approximate value $13,818) from BinanceUS account #1 and on October 28, 2022 of 0.73 Bitcoin (approximate value $20,586) from BinanceUS account #2. According to BinanceUS records and open sources available to case agents, it was learned that both BinanceUS account holders lived near each other in Illinois and moved to the same address in Washington. Case agents recognize account #1 holder as a known drug customer receiving drug parcels. Due to both account holders residing at the same address, case agents believe all of these funds sent to the **Blockchain.com Subject Account #1** are drug proceeds. The account holders are as follows:

- Account #1
- Name: Rohan Saxena
- DOB: XX/XX/1995
- Account #2
- Name: Maranda Evrard
- DOB: XX/XX/1994

42.      In addition to sending funds to **Blockchain.com Bitcoin address 3CT1H5oi9b2NAbTxgs5TyKpG8ALtSja5Mz (Subject Account #1)**, case agents found Mr. Saxena sent three Bitcoin transactions from his same BinanceUS account totaling 1.23 Bitcoins (approximate value $34,686) between July 6, 2022 and September 16, 2022 to a cluster of private Bitcoin addresses,

17

hereinafter referred to as Cluster B. Cluster B sent 0.087087 Bitcoin (approximate value $2,455.85) on August 15, 2022 to Binance Bitcoin address 1P6gwEZNBWxCn7TFvyTMR16ZTbyQWK2orp listing to Nicolas Bignone (the creator of PILL2DAYS website). Cluster B also sent 0.746253 Bitcoin (approximate value $21,044.33) on November 18, 2022 to private Bitcoin address 18DmR1rJ6ccp1HCnnuRRXVRQRYuqZMXx7d. This Bitcoin address also received funds from **Binance Subject Account #2** and **Blockchain.com Subject Account #1**. Case agents concluded that payments made by Mr. Saxena were traced into the same Bitcoin addresses receiving funds from **Subject Account #1** and **Subject Account #2**. This activity and the fact Mr. Saxena's and Ms. Evrard's payments are consistent with drug payment amounts, case agents believe **Blockchain.com Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, held in the name of RAUNAK SINGH (DOB: XX/XX/1991) with an associated email address of vikashq6999@gmail.com** and **Binance Account User ID #85674883, held in the name of ATUL KUMAR SINGH (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com (Subject Account #2)** are being used to receive and launder drug proceeds.

### D. Identification of Coinbase Deposits into Subject Account #2

43.     Case agents identified four Coinbase crypto currency accounts responsible for sending Bitcoin to **Binance Account User ID #85674883, held in the name of ATUL KUMAR SINGH (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com (Subject Account #2).** These thirty-five (35) transactions to **Binance Bitcoin address 1A56UYaDjmchbNZxCkdjd2vCgd8qmvVQEm contained in Subject Account #2** are believed to be drug payments.

44.     The first Coinbase account conducted one transaction to **Binance Subject Account #2** of 0.02512552 BTC (approximate value $708.54) on December 15, 2022. This account used to send funds to **Blockchain.com Subject Account #1** prior to switching to **Subject Account #2** which further shows

18

these funds are linked and for receiving drug payments. Furthermore, SOI-3 used to ship drug parcels to this account holder. This Coinbase account holder is as follows:

- Account #1
- Name: Christopher Michael Myrick
- DOB: XX/XX/1971
- Address: Richardson, TX

45. The second Coinbase account conducted two transactions to **Subject Account #2** totaling 0.05983 BTC (approximate value $1,687.21) on December 21, 2022 and February 9, 2023. This account also used to send funds to the **Blockchain.com Subject Account #1** prior to switching to **Subject Account #2** which further links both accounts and shows these funds are for drug payments. This Coinbase account holder is as follows:

- Account #2
- Name: Valentino Jimmy
- DOB: XX/XX/1986
- Address: Napakiak, AK

46. The third Coinbase account conducted one transaction to **Subject Account #2** of 0.02355655 BTC (approximate value $664.29) on November 28, 2022. This account also used to send funds to **Blockchain.com Subject Account #1** prior to switching to the **Subject Account #2** which further links both accounts and shows these funds are for drug payments. Furthermore, SOI-3 used to ship drug parcels to this account holder. This Coinbase account holder is as follows:

a. Account #3
b. Name: Ryan Daniel Bailey
c. DOB: XX/XX/1974
d. Address: Ravenna, OH

47. The final Coinbase account conducted thirty-one transactions to **Subject Account #2**

19

totaling 1.2807368 BTC (approximate value $36,116.78) between December 14, 2022 and March 23, 2023. Due to the large amounts of Bitcoin transferred to **Subject Account #2,** and the regular frequency, these transactions are consistent with the account being used to facilitate drug trafficking and/or payment processing by the Coinbase account holder. Furthermore, SOI-3 used to ship drug parcels to this same account holder further indicating the payments are drug proceeds and used to traffic drugs. This Coinbase account holder is as follows:

      a. Account #4

      b. Name: Jennifer Ann Bean

      c. DOB: XX/XX/1970

      d. Address: McDonough, GA

**E.      Identification of Coinbase Deposits into Subject Account#**1

48. Case agents identified eight Coinbase crypto currency accounts responsible for sending Bitcoin to **Blockchain account containing Bitcoin address 3CT1H5oi9b2NAbTxgs5TyKpG8ALtSja5Mz (Subject Account #1).** The sixteen (16) outgoing transactions from the eight Coinbase accounts to **Blockchain.com Bitcoin address 3CT1H5oi9b2NAbTxgs5TyKpG8ALtSja5Mz** contained in **Blockchain.com Subject Account #1** are believed to be drug payments.

49. The first Coinbase account conducted one transaction to **Subject Account #1** of 0.05836876 BTC (approximate value $1,645.99) on June 30, 2022. This Coinbase account holder is as follows:

• Account #1

• Name: Andrew John Cooper Harbor

• DOB: XX/XX/1988

• Address: West Lafayette, IN

50. The second Coinbase account conducted three transactions to **Subject Account #1** totaling 0.06501973 BTC (approximate value $1,833.56) between June 24, 2022 and September 27, 2022. This

20

account also sent funds to **Subject Account #2** after Blockchain.com **Subject Account #1** was frozen which further indicates these funds are for drug payments. Furthermore, SOI-3 used to ship drug parcels to this same account holder further indicating the payments are drug proceeds. This Coinbase account holder is as follows:

- Account #2
- Name: Christopher Michael Myrick
- DOB: XX/XX/1972
- Address: Richardson, TX

51. The third Coinbase account conducted one transaction to **Subject Account #1** of 0.0821388 BTC (approximate value $2,316.31) on April 11, 2022. This Coinbase account holder is as follows:

- Account #3
- Name: Jason Wendell Newman
- DOB: XX/XX/1972
- Address: Independence Charter Township, MI

52. The fourth Coinbase account conducted five transactions to **Subject Account #1** totaling 0.09177239 BTC (approximate value $2,587.99) between May 31, 2022 and October 28, 2022. This account also sent funds to the **Subject Account #2** after Blockchain.com **Subject Account #1** was frozen which further indicates these funds are for drug payments. This Coinbase account holder is as follows:

- Account #4
- Name: Valentino Sinclair Jimmy
- DOB: XX/XX/1986
- Address: Napakiak, AK

53. The fifth Coinbase account conducted one transaction to **Subject Account #1** of 0.01006564 BTC (approximate value $283.85) on April 24, 2022. This Coinbase account holder is as

follows:

- Account #5
- Name: Farnaz Mozaffari Kermaani
- DOB: XX/XX/1982
- Address: San Francisco, CA

54.     The sixth Coinbase account conducted three transactions to **Subject Account #1** totaling 0.04493579 BTC (approximate value $1,267.19) between April 28, 2022 and August 21, 2022.  This account also sent funds to **Subject Account #2** after the Blockchain.com **Subject Account #1** was frozen which further indicates these funds are for drug payments.  Furthermore, SOI-3 used to ship drug parcels to this same account holder further indicating the payments are drug proceeds.  This Coinbase account holder is as follows:

- Account #6
- Name: Ryan Daniel Bailey
- DOB: XX/XX/1974
- Address: Ravenna, OH

55.     The seventh Coinbase account conducted one transaction to **Subject Account #1** of 0.09629381 BTC (approximate value $2,715.49) on October 27, 2022.  This account holder also sent funds to **Subject Account #1** from his BinanceUS crypto currency account.  Furthermore, case agents recognize this account holder as someone SOI-3 shipped drug parcels to.  This Coinbase account holder is as follows:

- Account #7
- Name: Rohan Saxena
- DOB: XX/XX/1995
- Address: Round Lake Beach, IL

22

56.     The final Coinbase account conducted one transaction to **Subject Account #1** of 0.00017033 BTC (approximate value $4.80) on June 16, 2022.  Furthermore, SOI-3 used to ship drug parcels to this same account holder further indicating the payments are drug proceeds.  This Coinbase account holder is as follows:

    a.  Account #8

    b.  Name: Angel Marie Pitts

    c.  DOB: XX/XX/1975

    d.  Address: Baker, FL

**F.     Identification of CashApp Deposits into Subject Accounts#1 and #2**

57.     Case agents identified nineteen (19) CashApp crypto currency accounts responsible for sending Bitcoin to **Blockchain.com Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, held in the name of RAUNAK SINGH (DOB: XX/XX/1991) with an associated email address of vikashq6999@gmail.com containing Bitcoin address 3CT1H5oi9b2NAbTxgs5TyKpG8ALtSja5Mz** and/or **Binance Account User ID #85674883, held in the name of ATUL KUMAR SINGH (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com containing Bitcoin address 1A56UYaDjmchbNZxCkdjd2vCgd8qmvVQEm**.  SOI-3 utilized CashApp to receive customer drug payments, transfer Bitcoin drug proceeds to **Blockchain Subject Account #1**, and was then directed by "Steven Parker" to use CashApp to send Bitcoin drug proceeds to **Binance Subject Account #2**.  Case agents know this DTO utilizes CashApp to accept drug payments, via wire transfers, and as a result, it is the DTO's preferred method to then have payment processor co-conspirators, such as SOI-3, to transfer the funds to the next DTO co-conspirator in the form of Bitcoin and sometimes TetherUS.  Although transactions from all nineteen (19) CashApp accounts are believed to be the transfer of drug proceeds, case agents are only including those of most significance for the purposes of this warrant.

58.     The first CashApp account conducted fifty-five (55) transactions totaling 2.57718964 BTC (approximate value $72,676.75) between November 4, 2022 and March 22, 2023 to **Subject Account #2**

23

only.  This CashApp account holder is as follows:

- Account #1
- Name: Jasmine Gladue
- DOB: XX/XX/1991
- Address: Gillette, WY

59.     The second CashApp account conducted one transaction of 0.0355136 BTC (approximate value $1,001.48) on March 23, 2023 to **Subject Account #2** and one transaction of 0.03083808 BTC (approximate value $869.63) on July 27, 2022 to **Subject Account #1**.  The fact this account holder sent funds to **both Subject Accounts** further shows the connection between the two accounts, and that they are both being used for the same purpose.  This CashApp account holder is as follows:

- Account #2
- Name: Joeann J. Hickson
- DOB: XX/XX/1992
- Address: Youngstown, OH

60.     The third CashApp account conducted one transaction of 0.09599910 BTC (approximate value $2,707.17) on October 28, 2022 to **Subject Account #1**.  This transaction is of interest because the same person sent funds to the same **Subject Account #1** from their BinanceUS account as well. Furthermore, this account holder resides at the same address as a known drug customer (Rohan Saxena) who SOI-3 used to ship drug parcels to.  This CashApp account holder is as follows:

- Account #3
- Name: Maranda Evrard
- DOB: XX/XX/1994
- Address: Puyallup, WA

61.     The fourth CashApp account conducted two transactions totaling 0.06483305 BTC (approximate value $1,828.29) between November 20, 2022 and December 23, 2022 to **Subject Account**

24

**#2** and fifteen transactions totaling 0.21380571 BTC (approximate value $6,029.32) between June 2, 2022 and November 3, 2022 to Subject Account #1.  The fact this account holder sent funds to both **Subject Accounts** further shows the connection between the two accounts, and that they are both being used for the same purpose.  This CashApp account holder is as follows:

- Account #4
- Name: Charles Stanley
- DOB: XX/XX/1985
- Address: Youngstown, OH

62.    The fifth CashApp account belongs to SOI-3 and conducted forty-six (46) transactions totaling 2.87589419 BTC (approximate value $81,100.22) between April 18, 2022 and October 20, 2022 to **Subject Account #1.**  Prior to sending funds to **Subject Account #1,** SOI-3 regularly sent funds to the **Prior Subject Account**.  Case agents viewed the list of persons sending funds into this CashApp account and recognized many of them to be customers that SOI-3 sent drug parcels to.  One of the regular customers is located in Mukwonago, Wisconsin.  Some of the customers made transaction notes such as "supplements" or "happy meds" while other known customers disguised the purpose of the payment by noting it as "software", "computer parts", or "electronics".  After the reason for the transaction was concealed, SOI-3 transferred the funds, via Bitcoin to **Subject Account #1**.  Once **Subject Account #1** was frozen, SOI-3 was directed to begin transferring these same disguised funds to the **Subject Account #2**.  This CashApp account holder is as follows:

- Account #5
- Name: SOI-3
- DOB: XX/XX/XXXX
- Address: Pasadena, TX

63.    The sixth CashApp account conducted forty-three (43) transactions totaling 2.65301535 BTC (approximate value $74,815.03) between November 2, 2022 and April 4, 2023 to **Subject Account**

25

**#2**.  Case agents reviewed the persons sending funds to this CashApp account and observed dozens of incoming transactions from known drug customers (to include customers from Baraboo, Wisconsin and Mukwonago, Wisconsin) and at least one other payment processor (John Jerome).  SOI-3 personally shipped drug parcels to several of these drug customers, and as a result, case agents believe the incoming funds are drug proceeds.  These drug proceeds are then transferred, via Bitcoin, to the **Subject Account #2**.  One of the known drug customers concealed the purpose of the drug payment by indicating it was for "health supplements" and "care" instead of controlled substances.  Case agents know parcels containing controlled pharmaceuticals regularly improperly declare the contents as "health supplement" or "healthcare product."  Furthermore, many of the routine expenses being paid with this CashApp account are USPS postage at post office kiosks which is a common method this DTO ships its drug parcels.  Case agents believe this CashApp account holder is receiving drug proceeds, transferring the drug proceeds to the **Subject Account #2**, and also shipping drug parcels.  This CashApp account holder is as follows:

- Account #6
- Name: Christine Hadley
- DOB: XX/XX/1961
- Address: Gulf Breeze, FL

64.    The seventh CashApp account conducted one transaction of 0.09672453 BTC (approximate value $2,727.63) on October 27, 2022 to **Subject Account #1**.  This transaction is of interest because the same person sent funds to the same **Subject Account #1** from their BinanceUS and Coinbase accounts as well.  This CashApp account holder is as follows:

- Account #7
- Name: Rohan Saxena
- DOB: XX/XX/1995
- Address: Puyallup, WA

65.     The eighth CashApp account conducted twenty-eight (28) transactions totaling 1.44154807 BTC (approximate value $40,651.66) between November 3, 2022 and April 4, 2023 to **Subject Account #2**.  Case agents reviewed the persons sending funds to this CashApp account and observed dozens of incoming transactions from known drug customers and at least one other payment processor (John Jerome).  SOI-3 personally shipped drug parcels to this CashApp account holder (Leann Woodall).  The incoming drug proceeds are then transferred, via Bitcoin, to **Subject Account #2**.  One of the suspected drug customers identified the purpose of the drug payment as "Blane RX", and case agents believe "RX" refers to a prescription drug.  Case agents are aware that USPIS Postal Inspectors have identified bulk drug parcels being shipped to this CashApp account holder.  Furthermore, case agents know that this account holder is in communication with Steven Parker, similarly to SOI-3.  Case agents believe this CashApp account holder is receiving drug proceeds, transferring the drug proceeds to **Subject Account #2**, and also shipping drug parcels. This CashApp account holder is as follows:

- Account #8
- Name: LeeAnn Woodall
- DOB: XX/XX/1974
- Address: Greencastle, IN

66.     The ninth CashApp account conducted eighteen (18) transactions totaling 1.38091069 BTC (approximate value $38,941.68) between November 8, 2022 and April 5, 2023 to **Subject Account #2** and ten (10) transactions totaling 0.67014337 BTC (approximate value $18,898.04) between April 8, 2022 and October 30, 2022 to **Subject Account #1**.  The fact this account holder sent funds to both **Subject Accounts** further shows the connection between the two accounts, and that they are both being used for the same purpose.  In addition, SOI-3 directly shipped drug parcels to this account holder further indicating the payments are for the sale of drugs.  One person depositing funds into this CashApp account made what appears to be a sarcastic transaction note "dis aint for no pills 💀 💀".  This CashApp account holder is as follows:

- Account #9
- Name: Leona Dixon
- DOB: XX/XX/1985
- Address: Youngstown, OH

67. The tenth CashApp account conducted fourteen (14) transactions totaling 0.19743519 BTC (approximate value $5,567.67) between November 28, 2022 and April 4, 2023 to **Subject Account #2** and twenty-one (21) transactions totaling 0.19828912 BTC (approximate value $5,591.75) between June 16, 2022 and November 14, 2022 to **Subject Account #1**. The fact this account holder sent funds to both **Subject Accounts** further shows the connection between the two accounts, and that they are both being used for the same purpose. In addition, SOI-3 directly shipped drug parcels to this account holder further indicating the payments are for the sale of drugs. Case agents reviewed the persons sending funds into this CashApp account and recognized at least three of them who are drug shippers and payment processors for this DTO to include John Jerome. These drug shippers recognized by case agents who sent funds to this CashApp account have also been in communication with "Steven Parker." This CashApp account holder is as follows:

- Account #10
- Name: Angel Pitts
- DOB: XX/XX/1975
- Address: Baker, FL

68. The eleventh CashApp account conducted seventeen (17) transactions totaling 0.7819827 BTC (approximate value $22,051.91) between November 3, 2022 and April 5, 2023 to **Subject Account #2**. Case agents reviewed the persons sending funds to this CashApp account and recognized multiple known drug customers, to include Charles Stanley, and recognized a known DTO payment processor, John Jerome. SOI-3 personally shipped drug parcels to this CashApp account holder (James Coe). The incoming drug proceeds are transferred, via Bitcoin, to **Subject Account #2**. This CashApp account

28

holder is as follows:

- Account #11
- Name: James Coe
- DOB: XX/XX/1969
- Address: Corvallis, OR

69.     The final CashApp account conducted thirty-nine (39) transactions totaling 3.31007734 BTC (approximate value $93,344.18) between November 28, 2022 and April 4, 2023 to **Subject Account #2** and sixty-nine (69) transactions totaling 4.87903849 BTC (approximate value $137,588.89) between June 16, 2022 and November 14, 2022 to **Subject Account #1**.  The fact this account holder sent funds to both **Subject Accounts** further shows the connection between the two accounts, and that they are both being used for the same purpose.  In addition, SOI-3 directly shipped drug parcels to this account holder further indicating the payments are for the sale of drugs.  Case agents reviewed the persons sending funds into this CashApp account and recognized multiple known drug customers, drug shippers, and payment processors for this DTO.  Some of these drug shippers recognized by case agents have also been in communication with "Steven Parker."  Furthermore, the persons sending funds to this CashApp account are concealing the purpose of the transaction with notes such as "health supplement", "medical software", and "computer", while others made notes the payments were for "refills" and "180 pills."  Case agents believe funds received by this CashApp account are drug proceeds, and the funds are then transferred, via Bitcoin, to **Subject Account #1** and **Subject Account #2**.  This CashApp account holder is as follows:

- Account #12
- Name: John Andrew Jerome
- DOB: XX/XX/1982
- Address: Winchester, VA

70.     Case agents received records from Binance, pursuant to a DEA administrative subpoena. These records are pertaining to the **Prior Subject Account containing Bitcoin address**

**1JQhAAVQUrjoxmVhHZo2pfQzuZLxGyrXbG**.  This is the Bitcoin address that SOI-3 and payment processor, John Jerome, started sending drug proceeds to.  This Binance account holder appears to be the same account holder as Subject Account #1.  The account holder details show the same last name, date of birth, email address, phone number, and address.  Only the first name is different.  As a result, case agents believe the same person is in control of the **Prior Subject Account** and **Subject Account #1**.  The account holder details are as follows:

- Name: SHUBHAM SINGH

- DOB: XX/XX/1991

- Email: vikashq6999@gmail.com

- Phone: +91-9838969898

- Address: Faizabad, Uttar Pradesh, 224171, India

71.    Case agents have reviewed Binance and Blockchain.com records and reviewed drug payments being deposited into the **Prior Subject Account, Subject Account #1,** and **Subject Account #2.**  The records viewed by case agents reveal drug payment deposits began in the **Prior Subject Account. Subject Account #1** was opened and drug deposits continued in both accounts for a period of time until they ceased in the **Prior Subject Account.**  Upon Blockchain.com freezing **Subject Account #1,** drug deposits began into **Subject Account #2**.  Upon **Subject Account #2** being frozen, drug deposits have started again into the **Prior Subject Account**.  Case agents believe this pattern of switching accounts is done for the purpose of attempting to conceal illicit funds, avoid detection by law enforcement, and to circumvent reporting requirments by crypto currency exchanges.

72.    Case agents have learned through undercover communication with PILL2DAYS, reviewing text message communication between PILL2DAYS and drug customers, and reviewing Blockchain and Binance records that customers are making drug payments, via Bitcoin and TetherUS. Co-conspirators functioning as payment processors then transfer the funds as directed by Steven Parker.

The majority of the funds are transferred to the **Prior Subject Account, Subject Account #1,** and **Subject Account #2.** The drug proceeds being deposited into these accounts do not remain in these accounts. The **Prior Subject Account, Subject Account #1,** and **Subject Account #2,** as well as private wallets, primarily contained the illicit funds for only a few days at a time. Due to the complexity of tracing crypto currency, case agents do not yet know the final destination of much of the illicit proceeds, but case agents are able to ascertain funds leaving these **Subject Accounts** commonly are deposited into the same wallets before being transferred again. Due to funds that left both accounts eventually combining in the same wallets, it is believed the **Prior Subject Account, Subject Account #1,** and **Subject Account #2** are controlled by the same entity. Drug traffickers utilizing crypto currency commonly utilize private wallets since they are not registered to an entity and solely possessed by the unknown entity. They also commonly utilize crypto currency accounts with exchanges registered to other people which is believed to be the case with the **Prior Subject Account, Subject Account #1,** and **Subject Account #2.** This behavior is to conceal who the funds truly belong to and to make it more difficult for law enforcement to trace. It is also common for payment processors and drug customers to conceal the purpose of the payment. This was observed by case agents in many of the CashApp accounts that transferred the illicit funds to the **Prior Subject Account, Subject Account #1,** and **Subject Account #2.**[1]

73.      Sophisticated drug traffickers and money launderers prefer to use private crypto-currency wallets, which are controlled and stored on personal devices such as a laptop computer, cellular telephone, or thumb drive. This is preferred for the security of these funds since the funds are physically stored in the device (private wallet). Eventually, the funds need to reach a crypto-currency exchange which is similar to a "bank for crypto-currency." This is required by the drug trafficker/money launderer because the crypto-currency exchange is linked to a bank account, and this is how the funds are commonly exchanged from crypto-currency to fiat currency. Although crypto-currency can often be traced by law enforcement

---

[1] Attached to this affidavit as Exhibit A is a chart depicting the flow of SUA proceeds into and between Prior Subject Account, Subject Account#1, and Subject Account#2.

through private wallets and crypto-currency exchanges, law enforcement cannot locate or seize a private wallet stored on a personal device, unless that personal device is in the physical possession of law enforcement. As a result, criminal proceeds in the form of crypto-currency are regularly transferred between private wallets and crypto-currency exchanges to disguise the funds, and it is often times as the funds funnel through the crypto-currency exchange, such as Kraken, Binance (**Prior Subject Account and Subject Account #2**), and BlockChain (**Subject Account #1**), that law enforcement can seize the funds with the cooperation of the crypto-currency exchange "bank for cryptocurrency."

74. Based on all the above noted crypto currency accounts, case agents have identified the following amounts of suspected drug proceeds deposited into each account:

**Binance Account User ID #85674883, held in the name of ATUL KUMAR SINGH**

      a.  Bitcoin Total: 13.8317545 Bitcoin (BTC)

      b.  Approximate U.S. Dollar: $390,055.48

**Blockchain Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, held in the name of RAUNAK SINGH**

      a.  Bitcoin Total: 10.7294978 Bitcoin (BTC)

      b.  Approximate U.S. Dollar: $302,571.84

75. For all the reasons stated, based on their training and experience, and the investigation to date, case agents believe these funds located in the blocked **Blockchain Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, held in the name of RAUNAK SINGH (DOB: XX/XX/1991) with an associated email address of vikashq6999@gmail.com** and **Binance Account User ID #85674883, held in the name of ATUL KUMAR SINGH (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com**, are drug proceeds, and the accounts are being used to launder illicit proceeds. Furthermore, case agents know that the various types of crypto currency contained in these accounts can easily be exchanged for other types of crypto currency even after an account is frozen, and these values

32

are constantly fluctuating.

76. On April 4, 2023, case agents served Binance a letter requesting they freeze the withdrawal of funds from **Binance Account User ID #85674883, held in the name of ATUL KUMAR SINGH (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com (Subject Account #2)**. Binance provided the account balance for **Subject Account #2** on April 4, 2023 and again on April 12, 2023. Based on the updated balance, it was learned Bitcoin deposits continued into **Subject Account #2**. As of April 12, 2023, **Subject Account #2** balance is 0.77640782 Bitcoin (BTC) and 53275.61943204 TetherUS (USDT) with a combined value of approximately $76,800.78 USD. Since the account holder is still able to exchange the Bitcoin and TetherUS into other crypto-currencies within the same account, case agents request the seizure of all funds contained within this account.

77. Case agents have shown that drug proceeds have been transferred from known drug buyers, drug reshippers, and payment processors to **Subject Account #1 a**nd **Subject Account #2**. Case agents have specifically shown much more crypto-currency has transferred through the subject accounts than is the current balance. In addition, the funds being transferred through the subjects account(s) are not merely believed to be drug proceeds, but also that the funds are being used to further the drug trafficking organization in some of the CashApp accounts by paying expenses such as paying the postage of drug parcels. Case agents know that the value of Bitcoin is constantly fluctuating, and unlike traditional stocks, crypto-currency values continue to fluctuate 24 hours a day. The user(s) of the Subject Account(s) then exchange received crypto-currency from one currency to another. For these reasons, and for the fact that drug proceeds are co-mingled, being exchanged with other crypto-currency, and this account is being used to further the drug trafficking organization, case agents request a warrant to seize approximately a) **177914.622 TetherUS (USDT), 1.848321249 Bitcoin (BTC), and any other crypto-currency on deposit in Blockchain.com Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, held in the name of RAUNAK SINGH (DOB: XX/XX/1991) with an associated email address of**

**vikashq6999@gmail.com** and **b) 53275.61943204 TetherUS (USDT), 0.46479937 Bitcoin (BTC), and any other crypto-currency on deposit in Binance Account User ID #85674883, held in the name of ATUL KUMAR SINGH (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com.**

78.     Case agents believe that SOI-1 is a reliable witness as SOI-1 has provided a statement against SOI-1's own penal interest, and information provided by SOI-1 has been independently corroborated by case agents. SOI-1's criminal history consists of misdemeanor assault and misdemeanor menacing. SOI-1 has no prior felony convictions. SOI-1 has provided information in other investigations, and that information was found to be accurate and reliable.  SOI-1 is cooperating with law enforcement for potential consideration for his federal felony drug distribution arrest, which remains pending.

79.     Case agents believe that SOI-2 is a reliable witness as SOI-2 has provided a statement against SOI-2's own penal interest, and information provided by SOI-2 has been independently corroborated by case agents. SOI-2's criminal history consists of one prior federal felony conviction for conspiracy to commit health care fraud, mail and wire fraud, money laundering, and illegal monetary transaction, conspiracy to distribute controlled substances, and mail fraud. SOI-2 may have been arrested for forgery in the 1980s. SOI-2 has provided information in other investigations, and that information was found to be accurate and reliable.  SOI-2 is cooperating with law enforcement for potential consideration in his new federal felony drug conspiracy and drug distribution case, and any revocation sentence for his supervised release in the prior case.

80.     Case agents believe that SOI-3 is a reliable witness as SOI-3 has provided a statement against SOI-3's own penal interest, and information provided by SOI-3 has been independently corroborated by case agents.  SOI-3's criminal history consists of misdemeanor embezzlement, misdemeanor theft, felony possession of a controlled substance, and felony manufacture/delivery of a

34

controlled substance. SOI-3 is cooperating with law enforcement for potential consideration for SOI-3's federal felony drug distribution arrest, which remains pending.

81. Case agents believe that SOI-4 is a reliable witness as SOI-4 has provided a statement against SOI-4's own penal interest, and information provided by SOI-4 has been independently corroborated by case agents. SOI-4's criminal history consists of retail theft, misdemeanor and felony driving while intoxicated, misdemeanor burglary to a vehicle, and felony theft. SOI-4 is cooperating with law enforcement for potential consideration for SOI-4's federal felony drug distribution arrest, which remains pending.

82. Case agents believe that SOI-5 is a reliable witness as SOI-5 has provided a statement against SOI-5's own penal interest, and information provided by SOI-5 has been independently corroborated by case agents. SOI-5 has no criminal history. SOI-5 is not facing any prosecution and is cooperating with law enforcement with this investigation to aid law enforcement in the detection and prosecution of drug traffickers.

83. As of April 12, 2023, **Binance Account User ID #85674883, which contains 53275.61943204 TetherUS (USDT), 0. 77640782 Bitcoin (BTC), and any other crypto-currency on deposit in Binance Account User ID #85674883, held in the name of ATUL KUMAR SINGH (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com** is valued at approximately $76,800.78 USD.

84. At this time, **Blockchain.com Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, which contains 177914.622 TetherUS (USDT), 1.848321249 Bitcoin (BTC), and any other crypto-currency on deposit in Blockchain.com Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, held in the name of RAUNAK SINGH (DOB: XX/XX/1991) with an associated email address of vikashq6999@gmail.com** is valued at approximately $233,918.76 USD.

## CONCLUSION

85. Based on the facts and circumstances set forth in this affidavit, I submit that there exists

35

probable cause to believe that approximately a) **177914.622 TetherUS (USDT), 1.848321249 Bitcoin (BTC), and any other crypto-currency on deposit in Blockchain.com Account User ID #3a929d7a-1d47-4882-bbdc-daba25cf8a1a, held in the name of RAUNAK SINGH (DOB: XX/XX/1991) with an associated email address of vikashq6999@gmail.com** and **b) 53275.61943204 TetherUS (USDT), 0.46479937 Bitcoin (BTC), and any other crypto-currency on deposit in Binance Account User ID #85674883, held in the name of ATUL KUMAR SINGH (DOB: XX/XX/1990) with an associated email address of atulthakur.as@gmail.com** are:

    a. Proceeds of a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to deliver, distribute, or dispense a controlled substance by means of the Internet, in violation of Title 21, United States Code, Sections 841(h), 843(c)(2)(A), and 846; and distribution of a controlled substance by means of the Internet, in violation of Title 21, United States Code, Section 843(c)(2)(A);

    b. Proceeds involved in money laundering transactions in violation of Title 18, United States Code, Section 1956(a)(1).

    c. Subject to civil forfeiture under Title 21, United States Code, Section 881(a)(6) and Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C), and subject to criminal forfeiture under Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982(a)(1); and

    d. Subject to seizure via a civil seizure warrant under Title 18, United States Code, Section 981(b) and Title 21, United States Code, Section 881(b) and via a criminal seizure warrant under Title 21, United States Code, Section 853(f).

Exhibit A



Prior Subject Account
BTC Address 1JQhAAVQUrjoxmVhHZo2pfQzuZLxGyrXbG
November 8, 2021 through April 14, 2022

1JQhAAVQUrj...

Drug Customers and Payment Processors

Subject Account #1
BTC Address 3CT1H5oi9b2NAbTxgs5TyKpG8ALtSja5Mz
November 18, 2020 through October 22, 2022

3CT1H5oi9b2...

Drug Customers and Payment Processors

Subject Account #2
BTC Address 1A56UYaDjmchbNZxCkdjd2vCgd8qmvVQEm
November 2, 2022 through April 4, 2023

1A56UYaDjmc...

Drug Customers and Payment Processors

Customer Drug Payments